UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CLAUDIO CARDAROPOLI,<br><br>　　　　　Defendant. | Case No. 20-mj-3006 (KAR)<br><br>Charging District's<br>Case No.　　18-0417-18-CR-C-BCW |

MEMORANDUM AND ORDER DENYING THE GOVERNMENT'S
MOTION FOR PRETRIAL DETENTION

Defendant Claudio Cardaropoli is charged in a third superseding indictment returned by a grand jury in the Western District of Missouri with one count of conspiracy to distribute marijuana (over 1,000 kilograms); two counts of distribution of marijuana; and one count of conspiracy to commit money laundering. The government has moved for pre-trial detention on the grounds that there are no conditions of pretrial release that would assure the defendant's appearance as required or the safety of the community. The government invokes the presumption that applies in drug cases where the potential sentence is ten years or more. 18 U.S.C. § 3142(e)(3)(A). The defendant was arrested in Springfield, Massachusetts and invoked his right to a detention hearing in this district. The court held an evidentiary hearing on the government's motion on January 16, 2020. FBI agent Pasquale Morra testified. Neither side introduced any exhibits. The court had the benefit of a thorough pretrial services report. At the conclusion of the hearing, the court took the government's motion under advisement.

1

The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include the nature and circumstances of the offense charged; the weight of the evidence as to guilt; the history and characteristics of the accused, including family ties, history relating to drug or alcohol abuse, criminal history, record concerning appearances at court proceedings, financial resources and employment; and the nature and seriousness of the danger to any person or the community that would be posed by a release. *See* 18 U.S.C. § 3142(g). Even when the government invokes the presumption of detention, "[t]he burden of persuasion remains with the government to establish that no condition or combination of conditions will reasonably assure the appearance of the persons as required and the safety of any other person and the community." *United States v. Oliveira*, Criminal Action No. 16-10272-NMG, 2017 WL 690185, at *2 (D. Mass. Feb. 21, 2017). The presumption does not disappear and still carries weight in the court's determination.

As to the nature and circumstances of the offenses, the defendant is charged with being a courier in a sophisticated coast-to-coast drug trafficking organization selling high quality marijuana (DTO). He is alleged to have assisted in the distribution of marijuana and collected financial proceeds from buyers and remitted them to the DTO organizers. Agent Morra testified that the government's investigation of the DTO was initiated after a home invasion and murder in Missouri. There is no evidence that Mr. Cardaropoli was involved in the home invasion and murder or, for that matter, carried a weapon or engaged in any violent act in connection with the allegations in the indictment.

Information about the history and characteristics of the defendant comes primarily from the pretrial services report, supplemented by representations by counsel. The defendant is approximately 40 years old. He was born in Springfield, Massachusetts and raised in a

neighboring community.  He served in the Navy from 1997 to 2001, then returned to Springfield.  The defendant has two children, ages 15 and 12.  He does not live with his children's mother but is on good terms with her and shares custody of the children.  The defendant's parents live in the area and he would be welcomed to live with his mother.  The defendant's sister also lives in the area.  The defendant's family members appeared in court to support him.  The defendant has seasonal employment and limited financial resources.  His mother and sister would ensure that he had the money to travel to Missouri for court appearances.  The defendant's criminal history is negligible and consists of motor vehicle violations.  A 2011 conviction for possession of cocaine was vacated and dismissed with prejudice and is, accordingly, given no weight by the court.

In terms of the defendant's involvement in the DTO, Agent Morra testified that Mr. Cardaropoli was stopped in the Sacramento, California airport when a canine alerted to a bag carrying Cardaropoli's name which had been retrieved from the baggage carousel by co-defendant William P. Murphy.  When agents searched the bag, they found $47,000 in cash.  A fair inference from Agent Morra's testimony was that agents conducting surveillance observed Mr. Cardaropoli assisting with loading and unloading what the agents reasonably believed to be marijuana.  Agent Morra testified somewhat vaguely that agents had reason to believe Mr. Cardaropoli was responsible for distributing marijuana for the DTO in some five to six cities including Springfield.

1. Risk of Nonappearance.

The government argues that the defendant poses a risk of nonappearance primarily because of the scope of the DTO's activities, the amount of money it generated, and the fact that the government has not traced the DTO's assets.  In the court's view, this contention does not

outweigh the factors in Mr. Cardaropoli's favor in terms of the risk of non-appearance. It is, by definition, hard to disprove a negative and the defendant, not surprisingly, cannot disprove the government's contention that some members of the DTO may have access to funds for which the government has not accounted. This is, however, a 2018 case, and the government has had substantial opportunities to attempt to trace assets. There is no evidence the government recovered any money (or marijuana or firearms) when it arrested the defendant. There was no evidence that this defendant has been living on a scale incommensurate with relatively modest means over the last few years and, therefore, no evidence that he has access to undisclosed DTO funds that might fund his flight. He is a life-long resident of Western Massachusetts and has very strong family ties in the area, including his two young children, his parents, and a sister. He shares custody of his children with their mother and is reportedly very involved in caring for them. He has a history of relatively stable residences in the area and a history of some legitimate employment. The defendant has known since February 2019, when John A. Pereira, an alleged customer of the DTO, was arrested, that federal law enforcement officers were investigating the DTO's activities. He has not left the area. Further, a review of the docket in this case indicates that a substantial number of defendants were released pending trial (Dkt. Nos. 25, 48, 58, 74, 137, 146, 173, 239). As to the possible length of the sentence faced by the defendant, a point the government also stressed, the one defendant who has thus far been sentenced received a sentence of 24 months committed followed by three years of supervised release (Dkt. No. 183). Taking into account the recommendation for release in the pretrial services report, and conditions of supervised release that can be imposed, the court finds that the government has not proved by a preponderance of the evidence that there are no conditions of supervised release that will reasonably assure the defendant's future appearance in court.

2. Danger to the Community

The court also is not persuaded that the government has proved by clear and convincing evidence that there are no conditions of supervised release that will reasonably assure that the defendant does not pose a danger to another or the community.  In connection with this factor, the government pointed out that it began its investigation of the DTO in response to a home invasion and murder and that the crimes with which the defendant is charged are inherently dangerous to the community.  While this contention is entitled to weight, the court notes that the government acknowledged that there is no evidence this defendant was involved in the home invasion and murder and there is no evidence that any drugs, guns, or money were recovered when the government arrested him.  His criminal history is devoid of any hint of violence and, indeed, of significant criminal activity.  It appears that the DTO has been dismantled and there was no evidence that the defendant remains involved in illegal activities.  He is a veteran of the Navy, which should be given some consideration.  He reported no history of substance abuse disorder or alcohol abuse.  In these circumstances, the government has not shown by clear and convincing evidence that there are no conditions of supervised release that will reasonably assure that the defendant does not pose a risk of danger to another or the community if he is released on conditions pending trial.

A form of conditions of release for Mr. Cardaropoli is attached hereto as exhibit 1.  The United States Marshal is ordered to keep Mr. Cardaropoli in custody until a surety bond is posted.

Dated: January 21, 2020

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge